## CANISTER CO. v. OWENS–ILLINOIS GLASS CO. et al.

### No. 9705.

District Court, E. D. Pennsylvania.

Oct. 15, 1937.

Warwick Potter Scott, of Philadelphia, Pa., for plaintiff.

Schnader & Lewis, of Philadelphia, Pa., and Williams, Eversman & Morgan, of Toledo, Ohio, for defendants.

MARIS, District Judge.

This is a bill in equity to restrain unfair competition and for an accounting and damages. The defendants have moved to dismiss it upon the ground that it fails to set forth facts sufficient to constitute a cause of action. In considering these motions the facts set forth in the bill must be taken to be true. Briefly stated they are these:

Since the latter part of the nineteenth century plaintiff has been engaged in the manufacture and sale of composite containers consisting of a metal top and bottom and a body of fiber or heavy paper. In their manufacture the body of the container is bent around a mandrel and the two ends of the material thus forming the body meet. Along the line where the two ends of the material thus meet there is inserted a metal strip. This strip is used instead of glue to bind or seal the two ends of the container body together. It is, however, of an entirely distinctive design which serves as an attractive decoration for the finished product and is both ornamental and decorative.

Since the latter part of the nineteenth century plaintiff has manufactured and sold millions of these containers bearing the ornamental and decorative metal strip,

990

and they have become associated and identified in the minds of the entire public dealing with containers throughout the United States exclusively with the plaintiff. Until the occurrences complained of in the bill no other manufacturer in the United States had ever made or attempted to make a container of the same type which included the ornamental and attractive metal strip.

In 1933 plaintiff sold to Frankfort Distilleries, Inc. (hereinafter called "Frankfort"), machines for assembling in its plant at Baltimore the containers manufactured by the plaintiff, and from time to time thereafter sold and shipped to it non-assembled containers which were assembled by Frankfort at its plant. The purpose of this transaction was to enable Frankfort to pack its whisky bottles for sale and distribution to the public in containers manufactured by plaintiff and having plaintiff's distinctively ornamental and decorative metal strip, for the purpose of attracting by their appearance buyers for Frankfort's product and for the added purpose of eliminating the expense and trouble of shipping assembled containers to Baltimore. Whisky and other spirits manufactured by Frankfort at Baltimore are sold throughout the United States.

Thereafter about October, 1935, the Tin Decorating Company of Baltimore (hereinafter called "Tin Decorating"), commenced the manufacture and sale to Frankfort of metal parts for containers including metal strips of the distinctive design and type theretofore exclusively manufactured by plaintiff and used on plaintiff's product and the container parts so sold by Tin Decorating to Frankfort were assembled and used by Frankfort instead of plaintiff's containers for packing Frankfort's products. The manufacture and sale of these container parts by Tin Decorating was specifically and with conscious intent and motive in imitation of the distinctive and ornamental products theretofore manufactured by the plaintiff. Immediately upon learning of said acts of Tin Decorating, plaintiff, on October 12, 1935, wrote it the following letter of protest:

"October 12th, 1935
"The Tin Decorating Company of Baltimore
"Baltimore, Maryland
"Gentlemen:

"We are advised that you are making and selling a metal strip the purpose of which is to bind or seal the ends of a formed container body. This strip we are told you are selling to Frankfort Distilleries, Incorporated.

"We feel we have the right to assume that you knew this strip to be our own exclusive design, that it is the principal part of a container made exclusively by us, and that this strip is assembled on machines designed by us exclusively.

"The strip referred to has become so thoroughly identified with our product and ourselves throughout the country during thirty-eight years of active business, that any container so made would be believed to be a container made by us. We believe the general law of unfair competition clearly covers this case.

"We would like to believe that an explanation can be made which will change the aspect as we see it, of this whole matter. In that case, we would be very glad to hear from you.

"Very truly yours,
"The Canister Company
"By R. T. Garfein
"RTG*B                 "President."

Thereafter plaintiff made numerous further protests to Tin Decorating and its successors against the continuance of these acts.

In January, 1936, defendant Owens-Illinois Glass Company (hereinafter called "Glass Company") purchased all of the assets and assumed all of the liabilities of Tin Decorating. At about the same time defendant Glass Company incorporated defendant Owens-Illinois Can Company (hereinafter called "Can Company"). Defendant Can Company was and still is a wholly owned subsidiary of defendant Glass Company and all of its principal officers, except its president, were and still are officers of defendant Glass Company. Shortly thereafter defendant Glass Company transferred to defendant Can Company all the assets formerly of Tin Decorating, and defendant Can Company assumed all the liabilities of Tin Decorating. Thereafter defendant Can Company continued to manufacture and sell to Frankfort metal parts for containers, including metal strips of the distinctive design and type previously manufactured by plaintiff.

Plaintiff further avers in its bill that the manufacture and sale of these parts, especially the metal strips of distinctive design and type, by Tin Decorating and its successor, defendant Can Company, was a

direct violation, trespass, and fraud upon plaintiff's exclusive property right and constituted unfair competition, and that said acts resulted in unjust enrichment of the defendants and great loss to the plaintiff. It, therefore, prayed for an injunction and an accounting.

Defendants' motions to dismiss raise the question whether the facts which we have stated give rise to a cause of action against them. After full consideration we have reached the conclusion that they do not and that the plaintiff's bill must therefore be dismissed.

No right arising under a patent is here involved. Plaintiff's container may be freely copied by all the world, at least so far as its structural or functional features are concerned. Plaintiff, however, bases its case upon the proposition that it has acquired ·a property right in the distinctive design of the metal strip which it uses instead of glue to bind or seal the ends of its container body. Since this distinctive design, it says, is ornamental and serves as an attractive decoration for the finished product, it amounts to a distinctive trade dress of its product, which by long use has become publicly identified therewith and may not be copied by its competitors. It strongly argues that the manufacture by defendant Can Company of a similarly designed strip for Frankfort constitutes unfair competition.

It is obvious, as defendants contend, that the metal strip serves a functional purpose; namely, that of binding or sealing together the two ends of the container body. It is equally clear, however, from the averments of the bill that the strip is designed in such a way as to be ornamental and decorative and that this distinctive design has been adopted and used exclusively by the plaintiff for many years. Under these circumstances it may well be that plaintiff has acquired a right to the exclusive use in its business of the ornamental and decorative features involved in its distinctively designed metal strip even though it has no right to the exclusive use of the strip so far as its functional features are concerned. Manners v. Triangle Film Corporation (C.C.A.) 247 F. 301; Thayer Telkee Corporation v. Davenport-Taylor Mfg. Co. (D.C.) 46 F.(2d) 559.

■ Assuming that the plaintiff does have a right to the decorative features of the strip which it is entitled to have protected against unfair competition, we are confronted with the question whether the defendants' conduct constitutes such competition. In considering this question we observe at the outset that the defendants do not make containers, but merely manufacture and sell to Frankfort certain metal parts, including the decorative strips, for containers which are manufactured by Frankfort. Under these circumstances we think it clear that the defendants are not in any sense in competition with the plaintiff. If any one is in such competition, it is Frankfort, which actually makes and uses the containers. All that the defendants did was to manufacture and deliver to Frankfort metal parts for its use in manufacturing its own containers. It is true they intended to imitate plaintiff's design. This they did because it was that design which Frankfort wanted. But these parts could not be competitive with plaintiff's containers unless and until they themselves were incorporated into containers. Whether that ever took place was entirely in the hands of Frankfort. Certainly the defendants had no control over their use after their delivery to Frankfort. If the containers manufactured by Frankfort were palmed off by it as plaintiff's product or otherwise used in unfair competition with plaintiff, it was solely the act of Frankfort for which the defendants were not responsible.

■ We conclude that the defendants were guilty of no deception or other conduct unfair to the plaintiff in supplying Frankfort with the strips in question. Philadelphia D. Products v. Quaker City I. C. Co., 306 Pa. 164, 159 A. 3, 84 A.L.R. 466; Federal Electric Co. v. Flexlume Corporation (C.C.A.) 33 F.(2d) 412. The plaintiff's right, if it has one, is not in the decorative strip per se, but only in the strip as a decorative feature which identifies an assembled container. But, as we have said, defendants did not make containers, but only strips. This is, therefore, not the. case of a manufacturer who, with fraudulent intent, makes and supplies to a retailer a finished article of merchandise which is deceptively similar to that made by another manufacturer. The case of Rymer v. Anchor Stove & Range Co. (C.C.A.) 70 F.(2d) 386, which is relied on by the plaintiff, was of the latter kind. It is not authority for plaintiff's position in this case.

■ But, even if it were held that the defendants were responsible for Frankfort's

use of the containers it manufactured, we are unable to find in the facts averred in the bill any unfair competition with the plaintiff on the part of Frankfort. In the first place it is clear that that corporation does not sell the containers. It merely uses them to pack its product. It is idle for plaintiff to argue that because a container goes with each bottle of whisky Frankfort sells the containers. It is too clear for argument that Frankfort's customers are buying whisky, not containers. While the wrapping is necessary to the delivery of the product, it is not the product sold nor is it the subject of the sale. If Frankfort were selling its containers to other manufacturers of whisky it might well be in competition with the plaintiff. It is merely using them in its business, however. We think it clear under the facts averred in the bill that Frankfort is not engaged in competition of any kind with the plaintiff.

Furthermore, there is here no averment of any deception of the public. It is obvious that there could be none for, as we have said, Frankfort's customers are buying whisky, not containers. While the wrapping may attract them, it attracts them not to itself but to the merchandise it contains. If the attention of customers is drawn to the container, it is because it is an attractive wrapping provided by Frankfort for the whisky they are seeking to buy and not because of their belief that the container was made by plaintiff. Their belief as to that is immaterial since the container can only be an aid in selling the whisky. Plaintiff's business, however, is to sell containers. There is no averment that it sells them to the whisky-buying public. There is, therefore, in this case no palming off or other fraud or unfair practice. On the contrary each of Frankfort's customers gets exactly what he intended to buy. It must be remembered that this is not a case of a patented article or of a trade-mark or name. What the plaintiff seeks to protect is merely its distinctive trade dress of an article which all are free to copy. It can only have such protection against a competitor who, by copying its distinctive dress, has deceived present or prospective purchasers of the article. Here neither competition nor deception are shown.

When the facts are analyzed it will be seen that the present case is merely that of a consumer who has decided to manufacture an article for itself instead of buying it from another manufacturer. The transaction is completely open and above board and no fraud, deception, or unfair competition are involved. The most that can be said is that the plaintiff has lost a customer, and, while this is most unfortunate from its standpoint, it does not give rise to a cause of action against these defendants for unfair competition.

We have not overlooked defendants' argument that there is here a misjoinder of parties in that defendant Glass Company did none of the acts complained of. Since the bill must be dismissed for the reasons already given, it becomes unnecessary to consider this point, however.

Bill dismissed.